UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on March 13, 2025

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | GRAND JURY ORIGINAL |
| | ) | |
| | ) | VIOLATIONS: |
| CORTNEY MERRITTS, | ) | COUNTS 1-2:  18 U.S.C. § 1343 |
| | ) | (WIRE FRAUD) |
| | ) | |
| Defendant. | ) | FORFEITURE: |
| | ) | 18 U.S.C. § 981(a)(1)(C), |
| | ) | 18 U.S.C. § 982(a)(2), and |
| | ) | 28 U.S.C. § 2461(c) |

## INDICTMENT

The Grand Jury charges that:

## BACKGROUND

### The Defendant

1.     **CORTNEY MERRITTS** was a resident of Missouri.

2.     "Vetted Movers and Couriers" was a business, owned and operated by **MERRITTS**, that offered moving and furniture assembly and disassembly services.

3.     **MERRITTS** maintained an account at Navy Federal Credit Union ("NFCU") ending in -2454.

4.     **MERRITTS** filed his Federal Tax Return for 2019 on April 10, 2020, and did not declare any wages or salaries—only $1 of total income.

*The Small Business Administration's Economic Injury Disaster Loan Program*

5.    The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.  The SBA administers the "Economic Injury Disaster Loans" ("EIDL") program.  The program is designed to help small businesses that suffer substantial economic injury as a result of a declared disaster.  This program offers loans as well as "advances" that do not have to be repaid. The amount of the loan offered and the advance amount are determined by the SBA based on the information provided in the EIDL application.  In the application, applicants must certify under penalty of perjury that the information they have provided is true and correct.  EIDL funds are issued directly from the United States Treasury.  In March 2020, the SBA declared the COVID-19 pandemic a disaster that made the EIDL program available to small businesses to help alleviate economic injury that COVID-19 caused.

*The SBA's Paycheck Protection Program*

6.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted in March 2020 to provide emergency financial aid to Americans suffering from the economic effects of the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to smalls businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").  To obtain a PPP loan, a qualifying business must have submitted a PPP loan application signed by an authorized representative of the business.  Applicants were required to acknowledge the program rules and make certain affirmative certifications in order to obtain a PPP loan.

7.    A PPP loan application must have been processed by a participating financial institution (the lender).  If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

2

Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. These loans could be forgiven if the borrowers met certain conditions. The maximum loan amount available to a sole proprietor with no employees was $20,833.

*First EIDL Application – April 2020*

8.      On April 3, 2020, **MERRITTS** prepared and submitted and caused to be submitted an application to the SBA for an EIDL in the name of a sole proprietorship, "Vetted Courier and Logistics."

9.      In support of the application, **MERRITTS** claimed that Vetted Couriers had six employees and gross revenues for the 12 months prior to the date of the disaster (January 30, 2020) of $32,000. **MERRITTS** also requested an EIDL advance of up to $10,000.

10.     On April 29, 2020, the EIDL loan advance of $6,000, based on **MERRITTS'** claim of six employees, was declined because the SBA could not verify the bank account provided in the application.

11.     In or around May 2020, the SBA approved **MERRITTS'** EIDL loan application.

12.     On May 30, 2020, **MERRITTS** electronically signed the SBA Loan Authorization and SBA Loan Note for an EIDL loan in the amount of $8,500.

13.     On July 3, 2020, an SBA representative spoke with **MERRITTS**, who confirmed the bank account and authorized the release of $8,500 in EIDL loan proceeds.

14.     On July 3, 2020, because of **MERRITTS'** representations in the EIDL loan application, the SBA transmitted $8,500 to a NFCU bank account ending in -2454, maintained and controlled by **MERRITTS**.

15.     On July 7, 2020, $8,500 in EIDL loan proceeds were posted to **MERRITTS'** NFCU bank account ending in -2454.

16.    On July 13, 2020, based on **MERRITTS'** representation that Vetted Couriers had six employees, the SBA transmitted a further $6,000, representing the EIDL loan advance, to **MERRITTS'** NFCU bank account ending in-2454.

17.    On or about July 14, 2020, $6,000 in EIDL loan advance proceeds was posted to **MERRITTS'** NFCU bank account ending in -2454.

18.    After obtaining the EIDL loan and loan advance, **MERRITTS** used the proceeds for his personal benefit and enjoyment.

19.    On June 12, 2023, **MERRITTS'** EIDL loan was charged off following his failure to make any repayments.

## COUNTS 1-2
### (18 U.S.C. § 1343 – Wire Fraud)

20.    Paragraphs 1 through 19 are hereby realleged.

### THE SCHEME TO DEFRAUD

21.    From on or about July 8, 2020 to on or about April 22, 2021, the defendant, **MERRITTS**, knowingly devised, intended to devise, and participated in a scheme and artifice to obtain money and property, in connection with applications for EIDL and PPP funds, by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and with knowledge of the scheme's fraudulent nature ("the Wire Fraud Scheme" and/or the "scheme to defraud").

### PURPOSE OF THE SCHEME TO DEFRAUD

22.    It was the purpose of the scheme to defraud that **MERRITTS** would attempt to file, file, and cause the filing of materially false applications and requests for an EIDL and PPP funds, which he was not entitled to receive, and to spend the fraudulently obtained money, totaling over $20,832, for his own benefit and enjoyment.

4

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

23.    It was part of the scheme to defraud that:

*Second EIDL Application – July 2020*

24.    On July 8, 2020, one day after receiving an EIDL loan for Vetted Couriers, **MERRITTS** prepared and submitted and caused to be submitted an application to the SBA for an EIDL loan and advance in the name of a sole proprietorship, "Cortney Merritts."

25.    In support of the application, **MERRITTS** made the materially false claims that the business had 10 employees and gross revenues for the 12 months prior to the date of the disaster (January 30, 2020) of $53,000.  **MERRITTS** also requested an EIDL loan advance of up to $10,000, based on his representation that the business had 10 employees.

26.    On July 8, 2020, **MERRITTS'** loan application was denied because the information contained in this application (his phone number, bank account, email address, and social security number) was nearly identical to the prior application for "Vetted Courier and Logistics."

*PPP Loan Application – April 2021*

27.    On April 22, 2021, **MERRITTS** prepared and submitted and caused to be submitted an application for a PPP loan in the name of a sole proprietorship "Cortney Merritts."

28.    In support of the application, **MERRITTS** made the materially false claim that the business had gross income of $128,000.  **MERRITTS** further claimed that the business was established in 2020 and that he was the sole employee.

29.    In support of the application, **MERRITTS** prepared and submitted and caused to be submitted a false and fraudulent 2020 Form 1040 Schedule C, which was never filed with the

Internal Revenue Service, reporting that the business had $128,000 in gross income, $5,166 in total expenses, and a net profit of $121,634.

30.    Based on **MERRITTS'** representations about his gross income, **MERRITTS** was able to request a $20,832 PPP loan.

31.    On April 26, 2021, as a result of the false and fraudulent representations in the PPP loan application and supporting documentation, **MERRITTS'** PPP loan was approved in the amount of $20,832.

32.    On April 29, 2021, **MERRITTS** signed and executed loan documents including, a Business Purpose Statement, certifying that the money will be used for business-related purposes, and the SBA Note for a PPP loan in the amount of $20,832.

33.    On May 12, 2021, because of the fraudulent and false representations in the PPP Loan application and supporting documents, $20,832 in PPP loan proceeds was disbursed to **MERRITTS'** NFCU bank account ending in -2454.

34.    After fraudulently obtaining the PPP loan, **MERRITTS** used the proceeds for his personal benefit and enjoyment.

35.    On July 11, 2022, **MERRITTS** prepared and submitted and caused to be submitted a SBA Form 3508S, PPP Loan Forgiveness Application (Form 3508S), seeking loan forgiveness for his PPP loan. The application falsely claimed that **MERRITTS** had ten employees at the time both the PPP loan and related forgiveness applications were submitted. The application also falsely claimed that **MERRITTS** spent $20,832 of the loan on payroll costs and requested loan forgiveness in the same amount, when in fact the money had been used for his personal benefit and enjoyment.

36.    On or about July 18, 2022, because of the false and fraudulent representations in the Form 3508S submission, **MERRITTS'** PPP loan in the amount of $20,832 and the $254.03 in interest were forgiven.

### EXECUTION OF THE SCHEME TO DEFRAUD

37.    On or around the dates set forth below, the defendant

### CORTNEY MERRITTS

for the purpose of executing and attempting to execute the scheme to fraud described above, transmitted and caused to be transmitted, and did aid and abet, by means of wire communication in interstate commerce, a writing, sign, signal, picture, and sound, that is:

| Approximate Date | Description of Wire Transmission |
|---|---|
| July 8, 2020 | Defendant submitted an EIDL application over the internet from Missouri to a server located in Iowa used in processing such applications for the SBA. |
| April 22, 2021 | Defendant submitted a PPP loan application over the internet from Missouri to a server located in Virginia used in processing such applications for the SBA. |

(All in violation of Title 18, United States Code, Section 1343)

## NOTICE OF FORFEITURE

The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28 United States Code, Section 2461(c).

Upon conviction of the offense alleged in Counts One and Two, the Defendant,

### CORTNEY MERRITTS,

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

## MONEY JUDGMENT

In the event of conviction, the United States may seek a money judgment.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the Defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title

28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

*Edward R. Martin Jr.* */bpH*

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY IN AND FOR
THE DISTRICT OF COLUMBIA