UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 25-cr-00076-JMC |
| | : | |
| **CORTNEY MERRITTS,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION**

In his Motion to Dismiss, Defendant Cortney Merritts argues that this case should be dismissed for selective prosecution, or in the alternative that the government should be compelled to provide discovery that Defendant hopes will support his claim that he "would not be under indictment if he were not married to an outspoken former Democratic elected official." ECF No. 14 at 2. Defendant boldly and baselessly claims that the "prosecution reeks of selective prosecution" and that "the circumstances under which this indictment was brought raise serious questions of a constitutional magnitude." *Id.* at 2, 3. Despite Defendant's hyperbole, the facts are simple and lack intrigue. The government discovered Defendant's illegal conduct in 2023, was authorized to indict the matter in 2024, and by March 2025, with its investigation complete and all legal issues resolved, the government presented the case to the grand jury and an indictment was returned. Defendant's claim that the charges against him are the result of a change in the Presidential administration—however nefariously cast—is entirely unsupported by the facts.

A defendant asserting a claim of selective prosecution must meet a high burden of proof, one that Defendant here falls far short of. As discussed further below, Defendant's motion should be denied for the following two reasons: *First*, Defendant fails to make the requisite showing of discriminatory effect. Not only have numerous other individuals who fall outside of Defendant's

claimed protected class been prosecuted by U.S. Attorney's Offices across the country for the very same crimes Defendant faces here, but the U.S. Attorney's Office for the District of Columbia has itself charged defendants with wire fraud in connection with fraudulently-obtained loans of similar magnitude as the loans at issue in this case.[1]  That alone dooms Defendant's motion.

*Second*, Defendant fails to make the equally-requisite showing of discriminatory intent. The investigation that led to the charges in this case began under a prior Presidential administration and continued until it was indicted in March of this year.  A change in administration between the initiation of a criminal investigation and its conclusion is not evidence of discriminatory intent, yet Defendant provides nothing more.  For these reasons, and others discussed below, Defendant's motion should be denied in its entirety.

I.  **Factual Background**

Defendant is indicted on two counts of Wire Fraud, in violation of 18 U.S.C. § 1343, for submitting fraudulent loan applications to the United States Small Business Administration ("SBA") under the Economic Injury Disaster Loan Program ("EIDL") and the Paycheck Protection Program ("PPP").  In both applications, Defendant materially overstated the revenue he generated from his moving business, resulting in him receiving government funds to which he was not entitled.

The SBA administers EIDL to assist small businesses that suffer substantial economic injury as a result of a declared disaster.  This program offers both traditional loans that must be repaid and "advances" that do not have to be repaid.  In March 2020, the SBA began accepting

---

[1] It is not even entirely clear what "protected class" Defendant purports to be a part of.  Taken on its face, the purported class appears to cover *anyone* who is "marri[ed] to an outspoken political opponent of the Presidential administration in office" at the time an indictment is returned.  ECF No. 14 at 5.

EIDL applications relating to the COVID-19 pandemic, making the program available nationwide to small businesses. The amount of a loan offered to any business was determined by the SBA based on the gross revenue and cost of goods sold reported by the business in its loan application. The amount a business could receive as an advance was based on the number of employees it had, with a standard rate of $1,000 per employee. The maximum advance amount the SBA offered was $10,000. Applicants were required to certify that the information they provided was true and correct under penalty of perjury. If an application was approved, funds were issued directly from the United States Treasury.

Also in March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial aid to Americans suffering from the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the Paycheck Protection Program. This program authorized the SBA to guarantee loans to help eligible small businesses. A loan could be forgiven if the borrower met certain conditions. The total amount of PPP loans the SBA could guarantee was limited. Once the SBA guaranteed all the money that Congress authorized for the program, small businesses in need would no longer be able to receive financial help from the program. The maximum loan amount available to a sole proprietor with no employees was $20,833.

Defendant submitted his first EIDL application on April 3, 2020, as a sole proprietor seeking both a loan and an advance under the business name "Vetted Courier and Logistics." Defendant stated in his application that his company was in the "Transportation" business, was established in August 2017, and had generated $32,000 in revenue between January 30, 2019, and January 30, 2020. Based on the government's evidence, Defendant had indeed been operating his own moving company and had been paid for services by other moving companies, and his checking

3

account had received deposits totaling $31,354 in 2019. Defendant also claimed in this application that his business had six employees. There is no record of Defendant having any formal employees, nor did he did pay any federal or state payroll taxes for any employees in 2019 or 2020.

The SBA approved this application. The United States Treasury loaned Vetted Courier and Logistics $8,500 on July 7, 2020, and based on Defendant's claim that he had six employees, gave his company a $6,000 advance the following week. Defendant used the $14,500 for various personal expenditures. In 2023, after Defendant failed to make any payments and following repeated notices that his loan was delinquent, the SBA charged off the total principal and interest that he owed the agency. Defendant is not charged in connection with this first EIDL application.

On July 8, 2020—one day after receiving the loan proceeds for Vetted Courier and Logistics— Defendant submitted a second EIDL application to the SBA in an attempt to obtain additional money from the United States government. This time, Defendant claimed he operated a transportation business under his own name, "Cortney Merritts." Defendant fabricated this business, and in doing so made it more successful than his actual one. In his first EIDL application, Defendant had certified that his transportation business had generated $32,000 in revenue between January 30, 2019, and January 30, 2020, an amount that was consistent with the total deposits in his checking account. Defendant claimed in this second EIDL application that "Cortney Merritts" had generated $53,000 in revenue during the same period. And whereas Defendant had certified in his first EIDL application that his transportation business had six employees, Defendant claimed in the second EIDL application to have ten. This enabled him to request an advance of up to $10,000, the maximum amount available. Defendant claimed in this application that "Cortney Merritts" was established on February 1, 2019. However, there is no evidence that Defendant operated a separate enterprise distinct from Vetted Courier and Logistics.

4

Defendant did not receive the funds he was hoping for. The SBA's system determined that the applicant information for "Cortney Merritts" was nearly identical to the prior application for "Vetted Courier and Logistics" and therefore denied Defendant's second application.

On April 22, 2021, Defendant applied for a PPP loan under the business name "Cortney Merritts." He represented in this application that this was a sole proprietor transportation business that he established in 2020, and that he was its sole employee. Defendant's bank deposits suggest that as the pandemic spread in 2020 and early 2021, his business generated significantly less revenue than in 2019. In 2019, Defendant's bank deposits totaled $31,354; in 2020, excluding payments from the government, they totaled only $25,423; and by April 21, 2021, Defendant's checking and savings accounts had a combined balance of $98.43. Though Defendant's bank deposits in 2020 from sources other than the government were less than $26,000, he claimed in his application that his business's gross income in 2020 was $128,000. He made that claim twice in the application form itself, as well as in a draft IRS Form 1040 Schedule C he submitted with his application as supporting documentation. Defendant certified that the information in his application was materially accurate.

Based on Defendant's representation that his business had generated over $100,000 in gross income, Defendant was able to request a $20,832 PPP loan—the maximum amount available for a sole proprietor with no employees. Relying on Defendant's representations, a lender approved, and the SBA guaranteed, the $20,832 PPP loan Defendant requested. The funds were disbursed to his account on May 12, 2021. On July 11, 2022, Defendant applied for his PPP loan to be forgiven and represented that he had complied with all requirements of the PPP rules. Based on his representations in that application, the SBA compensated the lender for forgiving Defendant's outstanding principal balance of $20,832 and interest of $254.

In short, Defendant knowingly and willingly devised a scheme to misrepresent his business activities to the United States government to obtain funds he was not entitled to receive. The day after receiving the loan from his first EIDL application, Defendant concocted a fraudulent scheme to get even more money from the government by submitting a second EIDL application under a different name with made up revenue and employees. Then, after PPP loans became available, Defendant again deceived the government to obtain money he was not entitled to. The PPP application walked Defendant through the formula that dictated how much money he could receive. Seeing how gross income would be used to calculate the loan amount, Defendant claimed to have made five times more than the total amount of deposits he had received from sources other than the government, and obtained the maximum loan amount possible.

## II.   Defendant Fails to Satisfy the High Evidentiary Showing Necessary to Establish Selective Prosecution.

Defendant claims the indictment should be dismissed because his prosecution is the result of "selective prosecution." ECF No. 14 at 1. He bases this argument on mere speculation, rather than on facts, and thus fails to meet the high threshold necessary to prevail in such a claim.

"The standard applicable to a claim of selective prosecution 'is a demanding one[.]'" *United States v. Rhodes*, No. 22-CR-15 (APM), 2022 WL 3042200, at *4 (D.D.C. Aug. 2, 2022) (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). "[T]he presumption of regularity applies to prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (internal quotation marks and alterations omitted). To make such a showing of "clear evidence," a defendant must establish that the government's actions "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (citation and internal quotation marks omitted). Defendant here has

6

failed to provide clear evidence of either discriminatory effect or discriminatory purpose. He has provided instead only his own speculative personal conclusions. His claims of selective prosecution should be rejected.

### a. There is No Evidence of Discriminatory Effect.

To establish selective prosecution, Defendant must first "prove that [he] was singled out for prosecution from among others similarly situated[.]" *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (citation omitted). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.* (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). Defendant's claim of discriminatory effect fails because he provides no evidence that others outside of his purported protected class were similarly situated to him but were treated differently. *See United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (explaining that a similarly situated individual is "one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced" (citation and internal quotation marks omitted)).

Defendant claims discriminatory effect because he is being prosecuted and others "subject to the jurisdiction of the United States Attorney's Office for the District of Columbia who … allegedly submitted false PPP or EIDL claims for losses under $30,000" were not. ECF No. 14 at 5. At first glance, the group with which Defendant claims commonality seems oddly specific—why "under $30,000" and not "under $50,000," or under "$75,000," or some other seemingly arbitrary number? And why only people who are "subject to the jurisdiction of the United States Attorney's Office for the District of Columbia," and not any of the other dozens of U.S. Attorney's Offices throughout the country, or, for that matter, any of the countless other local, state, and

7

federal prosecuting bodies who would have jurisdiction to prosecute the types of fraud Defendant has committed here?

On further examination, the reasons become clear. First, earlier this year the U.S. Attorney's Office for the District of Columbia convicted a former Metropolitan Police Department officer for wire fraud—the very same crime charged against Defendant here—for fraudulently obtaining $35,000 in EIDL and PPP loans. https://www.justice.gov/usao-dc/pr/former-mpd-officer-pleads-guilty-covid-emergency-loan-fraud. Had Defendant expanded his parameters to include people prosecuted by this office for loans of under $35,000, instead of under $30,000, then presumably his claim of selective prosecution would crumble. Second, even limited to his arbitrarily-narrow group, Defendant's claim rings false. Just two years ago this same office convicted yet another Metropolitan Police Department officer for wire fraud and money laundering in connection with a scheme to obtain PPP loans totaling only $18,350—less than the loans obtained by Defendant. https://www.justice.gov/usao-dc/pr/police-officer-found-guilty-two-felony-counts-involving-paycheck-protection-program-loans. Those two recent examples alone prove false Defendant's claim that he "is the only known person in that group to be prosecuted for this crime[.]" ECF No. 14 at 5.

Moreover, widening the scope beyond just this office, it becomes clear that many other individuals *have* been prosecuted for similar conduct as Defendant. A simple Google search revealed that the charges against Defendant are not nearly so unique as he claims—in August 2023 the U.S. Attorney's Office for the Southern District of Ohio indicted a defendant for wire fraud in connection with a fraudulent PPP loan application for which he received approximately $21,000, https://www.justice.gov/usao-sdoh/pr/grand-jury-indicts-local-man-submitting-false-ppp-loan-application; in September 2023 a defendant being prosecuted by the U.S. Attorney's Office for the

Middle District of Florida pleaded guilty to wire fraud in connection with a $20,132 PPP loan, https://www.justice.gov/usao-mdfl/pr/ocala-woman-pleads-guilty-fraud-relating-covid-19-relief-funds; in September 2024 the U.S. Attorney's Office for the Southern District of Illinois indicted a defendant for falsely applying for, accepting, and spending $20,614 in PPP funds for personal expenses, https://www.justice.gov/usao-sdil/pr/belleville-woman-facing-ppp-loan-fraud-charges; and in November 2024 the U.S. Attorney's Office for the Western District of Missouri indicted a defendant for wire fraud for fraudulently obtaining a $20,000 PPP loan, https://www.justice.gov/usao-wdmo/pr/former-va-employee-indicted-covid-fraud.

Those and undoubtedly many other similar cases demonstrate that Defendant has not, and indeed cannot, meet the first prong required to prove selective prosecution—a discriminatory effect. *See Armstrong*, 517 U.S. at 465. To the contrary, other defendants who, as far as it is known, fall outside of Defendant's purported protected class have been prosecuted for similar crimes under similar circumstances. Consequently, Defendant has not shown there are "similarly situated offender[s] … outside the protected class who ha[ve] committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008); *see also United States v. Rundo*, 108 F.4th 792, 799 (9th Cir. 2024) ("The point of the 'similarly situated' analysis is to 'isolate the factor allegedly subject to impermissible discrimination.'"); *cf. Dal Molin v. Cnt'y of Napa Conservation Devel. & Planning Dep't*, 266 F. Appx 585, 585-86 (9th Cir. 2008) ("Appellants have not shown that the several individuals who were prosecuted under similar circumstances were also related to political activists. Nor have they shown that the individuals who went unprosecuted were unrelated to political activists. The district court was therefore correct to grant summary judgment against Appellants on their selective prosecution claim.").

### b. There is No Evidence of a Discriminatory Purpose.

Defendant likewise fails to come forward with any evidence that his prosecution is "motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. To show a "discriminatory purpose," a defendant must show that the prosecution was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (internal citations and quotation marks omitted); *see also Wayte v. United States*, 470 U.S. 598, 610 (1985) ("Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' and not merely 'in spite of,' its adverse effects on an identifiable group." (cleaned up)). And he must also show this deliberate selection was made by the prosecutorial authorities handling his case. *Khanu*, 664 F.Supp.2d at 34-35 (finding that defendant's claims of government-wide discrimination was "too far removed from the actual prosecuting authorities in this case to allow the Court to infer a discriminatory purpose.").

Defendant concedes, as he must, that there is no "direct evidence of [a discriminatory] motive or intent" here. ECF No. 14 at 6. Instead, Defendant attempts to meet his burden by referencing some undefined "statistical disparities or other indirect evidence regarding the unequal application of the law." *Id.* (citation omitted). As to any purported "statistical disparity," as discussed above, such a claim is demonstrably false based on at least two other recent cases prosecuted by this office, and is further undercut by even a cursory review of recent similar prosecutions in other jurisdictions across the country. And even if there were some statistical basis for Defendant's claim—which, again, there is not—a defendant cannot satisfy the *Armstrong* standard using generalized statistics unmoored from the facts of his case and situation. *See United States v. Bass*, 536 U.S. 862, 863-64 (2002) ("Even assuming that the *Armstrong* requirement can

be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*.") (emphasis in original); *cf. Rundo*, 108 F.4th at 806 ("[S]tatistics alone cannot prove discriminatory motive[.]").

Absent any direct or even indirect evidence of selective prosecution, Defendant asserts that "[t]he discriminatory purpose is implicit where, as here, one political administration does not bring charges against the husband of an outspoken Democratic former congresswoman, and the new political administration does[.]" ECF No. 14 at 6.  This is not evidence of discriminatory motive—it is speculation.  Simply repeating the purported protected class of which Defendant claims he is a part does not provide any evidence of the prosecutors' intent.  And Defendant provides nothing more.

Despite seizing upon the time elapsed between when the investigation began and when it was indicted, *see id.* at 3, Defendant ignores entirely the critical fact that the very prosecution he claims is politically motivated was *initiated* during the prior Presidential administration.[2] Defendant cannot credibly assert, and does not appear to, that the investigation into his fraudulently-obtained loans, or the months of work that went into moving the case toward indictment under the prior administration, was politically motivated.  His complaint appears to be simply that there was a change in administration between when the case was initiated and when it was ultimately indicted.

---

[2] Defendant writes that the investigation into the charges that were ultimately indicted in this case was ongoing "[a]s early as April 2024[.]"  ECF No. 14 at 3.  In fact, the investigation into whether Cori Bush misused campaign funds in connection with payments made to Defendant for security services began in 2023.  It was through that investigation that in 2023 the government also became aware of and began investigating the fraudulent EIDL and PPP loan applications that are currently at issue.  This further undercuts Defendant's claim that he was somehow targeted for prosecution for any impermissible purpose.

11

But the change in administration is a red herring. The investigation remained open throughout 2023 to 2025. It was never declined or otherwise closed by this office or the investigating law enforcement agencies. The investigation—started and pursued for months under the prior administration—was not abandoned only to be resurrected once the current administration came into power. To the contrary, the investigation ran its due course and, once the government was satisfied that its investigation was complete and all legal issues had been resolved, the case was presented to the grand jury. *See Rundo*, 108 F.4th at 805 ("[W]e have never held that the timing of prosecutions is suggestive of improper motive."); *United States v. Brown*, 820 F. Appx 191, 199 (4th Cir. 2020) ("[W]hile [defendant] appears to insinuate that the Government's delay in bringing an indictment is evidence of invidious intent, that vague allegation cannot suffice for a credible showing of discriminatory purpose."); *United States v. Matter*, 818 F.2d 653, 655 (8th Cir. 1987) ("Likewise, we reject Matter's contention that the three-year delay between the date of the offense and the date of the indictment is evidence of selective prosecution in view of the government's explanation that the investigation remained open and active from 1984 to the date the indictments were returned and Matter was arrested."); *cf.* ECF No. 14 at 3 (conceding that Defendant is "unaware of the internal machinations of the United States Attorney's Office").

Prosecutors "retain broad discretion to enforce the Nation's criminal laws," *Armstrong*, 517 U.S. at 465 (internal quotations omitted), and "their decisions are presumed to be proper absent clear evidence to the contrary[,]" *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017); *see also United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) (en banc) ("The presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice."). In

the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Prosecutorial "discretion is essential to the criminal justice process," and a defendant thus must show "exceptionally clear proof" of an improper motive before the court will infer that the discretion has been abused. *McClesky v. Kemp*, 481 U.S. 279, 297 (1987).

Defendant seeks a ruling that this case should be dismissed not because the government's evidence is insufficient, but merely because he is married to a former Democratic elected official and was indicted while a Republican is President of the United States. Yet that is not the standard. Defendant falls far short of providing clear evidence of any discriminatory effect or discriminatory intent. Others have been prosecuted for similar crimes of similar magnitude both by this office and throughout the United States. This investigation was initiated and pursued for many months under the prior administration. Defendant has put forth no evidence that any government official involved with deciding to prosecute this case was motivated by impermissible considerations or discriminatory influence. Defendant's motion to dismiss should be denied.

### III.  Defendant Has Failed to Demonstrate He is Entitled to Discovery to Support a Selective Prosecution Claim.

As an alternative request for relief, Defendant claims he is entitled to information relating to "the review, approval or declination, and presentation of charges" both against Defendant himself, and also "of others for PPP or EIDL fraud with losses less than $30,000." ECF No. 14 at 1. For the same reasons that Defendant falls woefully short in seeking dismissal of the charges against him, he equally fails in his request for discovery to support his facially-inadequate claim of selective prosecution.

To obtain discovery relating to a selective prosecution claim, a defendant must make at least a "colorable claim" of selective prosecution. *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982). This requires a defendant to offer "some evidence tending to show the existence of the essential elements of the defense," *Armstrong*, 517 U.S. at 468 (citation omitted), that is, "some evidence of both discriminatory effect and discriminatory intent," *Bass*, 536 U.S. at 863. This is a "rigorous standard[,]" which "itself [is] a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464, 468.

"[A] defendant must provide something more than mere speculation or 'personal conclusions based on anecdotal evidence[.]'" *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *Armstrong*, 517 U.S. at 470). Simply stated, if a defendant fails to show either discriminatory effect or discriminatory intent, he is not entitled to discovery. *See United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997) (citing *Irish People, Inc.*, 684 F.2d at 947); *see also Stone*, 394 F. Supp. 3d at 36 ("If one seeks permission to embark on discovery related to selective prosecution, it is not enough to simply state that the prosecutor was biased. Defendant must *show* that in his case, the decisionmaker acted with a discriminatory purpose." (emphasis in original)). For the reasons already discussed, Defendant has failed to make the requisite showing for discovery related to a selective prosecution claim, and his request should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, and related motion to compel discovery, should be denied.

                                            Respectfully submitted,

                                            JEANINE FERRIS PIRRO
                                            UNITED STATES ATTORNEY

By:     */s/ Brian P. Kelly*
           BRIAN P. KELLY (D.C. Bar No. 983689)
           Assistant United States Attorney
           United States Attorney's Office
           District of Columbia
           601 D Street NW
           Washington, DC 20530
           Office: (202) 252-7503