UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br> )<br>v. )   No. 1:25-CR-76-JMC<br> )<br>CORTNEY MERRITTS, )<br>    Defendant. ) | |

**DEFENDANT'S MOTION TO DISQUALIFY THE U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA OR, IN THE ALTERNATIVE, THE AUSAs WHOSE CONDUCT IS AT ISSUE IN THE PENDING CIVIL 26 U.S.C. § 6103 LAWSUIT**

Defendant Cortney Merritts ("Merritts"), by and through his undersigned counsel, respectfully requests that this Court disqualify the U.S. Attorney's Office for the District of Columbia or, in the alternative, the Assistant United States Attorneys whose conduct is at issue in the 26 U.S.C. § 6103 civil lawsuit currently pending in this judicial district. *See Merritts v. United States*, Case No. 1:25-cv-04343.

### I. Introduction

During the pendency of this criminal case, the U.S. Attorney's Office for the District of Columbia obtained confidential tax return and return information from the IRS. On April 30, 2024, the IRS disclosure officer expressly warned the U.S. Attorney's Office for the District of Columbia: "[i]f you or other personnel disclose the information contrary to these guidelines or use it for other purposes, you may become liable for civil damages, fines, and imprisonment for unauthorized disclosure under IRC Sections 7213, 7213A, and 7431, as well as Title 18 Section 1905 of the United States Code." (*See* Doc. 31-5 at 1). Despite being expressly on notice by the IRS not to violate Section 6103 by disclosing confidential tax returns and return information, the U.S. Attorney's Office for the District of Columbia published—on the public docket of this federal

1

criminal case—the precise tax return and return information for which disclosure was statutorily prohibited. *See* 26 U.S.C. § 6103(b)(8) ("The term 'disclosure' means the making known to any person in any manner whatever a return or return information").

As the federal courts have long recognized, this is no small matter. "[I]n the wake of Watergate and White House efforts to harass those on its 'enemies list,'" Congress passed the strict confidentiality requirements found in Section 6103. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 611 (D.C. Cir. 1997). Against this backdrop, the sharing of return information by the IRS with other agencies—specifically including the U.S. Department of Justice outside of its then-operational Tax Division—raised privacy concerns. Rather than allowing the Executive Branch including the U.S. Department of Justice to control sensitive taxpayer records, "Congress undertook direct responsibility for determining the types and manner of permissible disclosures." *In re U.S.*, 817 F.3d 953, 960 (6th Cir. 2016) (quoting Office of Tax Policy, Taxpayer Confidentiality Provisions, Vol. I at 22). "To give teeth to these confidentiality provisions, Congress increased the criminal penalties found in 26 U.S.C. § 7213 *and added civil liability*." *See Biden v. IRS* (Case No. 1:23-cv-02711-RC) (Doc. 39 at 9) (emphasis added). As Judge Contreras explained, "Congress intended taxpayers' return information to be broadly protected from disclosure to prevent abuse by Executive officers and politicization of the voluntary assessment system" and "the evolution of these statutes additionally demonstrates that Congress specifically decided that civil liability for federal employees' unlawful activity should lie against the federal government and not against the employees themselves." (*See id.* at 9-10.) 34. As the D.C. Circuit has stated: "This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes. The assurance of privacy secured by § 6103 is fundamental to a tax system that relies upon self-reporting." *Gardner v.*

*United States*, 213 F.3d 735, 738 (D.C. Cir. 2000) (citation omitted). For these reasons, federal courts including the D.C. Circuit have long emphasized that the protections afforded by Section 6103 ring hollow when not enforced—and Congress created a private right of action for taxpayers when federal officials violate Section 6103 in the form of statutory penalties and punitive damages.

In this case—after the defense moved for dismissal based on selective prosecution of an indictment against the husband of a former Democratic United States Congresswoman—the U.S. Attorney's Office unambiguously violated Section 6103. That fact should hardly be in dispute: after violating federal law despite being told by the IRS of the consequences for doing so, the U.S. Attorney's Office for the District of Columbia filed a motion with this Court seeking *nunc pro tunc* permission for the unlawful disclosure of confidential tax return information that had already occurred. (*See* Doc. 37). Nevertheless, as 26 U.S.C. § 7431 expressly permits, Merritts filed a lawsuit for damages against the United States for the knowing or negligent unauthorized disclosure of tax returns and return information in violation of Section 6103. That lawsuit remains pending in this judicial district.

II. **Merritts Has the Right to Be Prosecuted By Disinterested Prosecutors and This Court Has the Responsibility to Guard Against Even the Appearance of Impropriety**

On December 2, 2025, the defense in this case notified Government counsel—AUSA Emily Miller, AUSA Brian Kelly, and SAUSA Rami Sibay—by email that their publication of Merritts's confidential tax return and return information on the public docket of this case "constitutes a clear violation of Section 6103." Three days later, SAUSA Sibay withdrew from this case. (Doc. 38).

On December 22, 2025, the defense formally requested by email that the U.S. Attorney's Office for the District of Columbia recuse itself from further participation in this pending federal criminal case—as the pending civil lawsuit focuses specifically on the conduct of Assistant United States Attorneys currently prosecuting Merritts and the conduct alleged to violate the law occurred

3

during the litigation of this criminal case. This necessarily creates both a conflict of interest and the appearance of impropriety for both the U.S. Attorney's Office for the District of Columbia and for the Assistant United States Attorneys whose conduct is at issue in the civil case. *See, e.g.,* 5 CFR § 2635.101(b)(14). Anticipating the real world realities of the timing of this issue—which was solely the result of conduct by the U.S. Attorney's Office in late November and early December 2025, *not* the result of any conduct by Merritts—the defense made clear that while ready and prepared to try this case in January 2026, Merritts would not object to a continuance if that was necessary so the Government could staff this case with conflict-free prosecutors.

On December 23, 2025—without, in any way, addressing the issues raised by Merritts—the Government notified the defense by email that neither the U.S. Attorney's Office for the District of Columbia nor any person currently on the prosecution team "intends to recuse from this matter."

Thus, as it stands, the defense gave the prosecutors the opportunity to do the right thing. However, as they have opted not to do so, the law requires this Court to disqualify them from further prosecution of this case.

The right to a fair trial encompassed in the Due Process Clause of the Fifth Amendment affords criminal defendants including Merritts certain rights not specifically enumerated in the Constitution. These rights include, *inter alia*, the right to an unbiased judge, *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971), to a presumption of innocence, *Estelle v. Williams*, 425 U.S. 501, 503 (1976), to have the government prove every element of its case beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 365 (1970), and to obtain exculpatory evidence in the government's possession, *Brady v. Maryland*, 373 U.S. 83 (1963). In fundamental terms that strike at the heart of a criminal defendant's rights in this country, a "fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955). Thus, "[f]airness of course requires an absence of actual bias in the trial of cases," *id*. and, accordingly, "our system of law has always

4

endeavored to prevent even the probability of unfairness." *Id*.

Thus, it is not surprising that the Supreme Court has long recognized that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249–50 (1980); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

Indeed, the U.S. Court of Appeals for the Fourth Circuit has held that prosecution by a prosecutor with impermissibly conflicted interests (in that case, representing the wife of an accused while serving as a prosecutor) "violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment." *Ganger v. Peyton*, 379 F.2d 709, 714 (4th Cir. 1967). And other courts in various contexts have raised similar concerns in cases that are largely factually dissimilar but where the general legal principles apply with full force to this case: the right to be prosecuted by prosecutors who are both conflict-free and who appear to the public to be conflict-free. *See, e.g., United States ex rel. SEC v. Carter*, 907 F.2d 484, 486 n.1 (5th Cir. 1990); *United States v. LaVallee*, 439 F.3d 670, 681 (10th Cir. 2006); *United States v. Heldt*, 668 F.2d 1238, 1277 (D.C. Cir. 1981); *Faulkner v. State*, 260 P.3d 430, 431 (Okla. Crim. App. 2011); *In re Goodman*, 210 S.W.3d 805, 808 (Tex. App. 2006); *Lux v. Commonwealth*, 484 S.E.2d 145, 149 (Va. App. 1997); *State v. Eldridge*, 951 S.W.2d 775, 782 (Tenn. Crim. App. 1997); *State v. Hunter*, 313 S.C. 53, 54 (S.C. 1993); and *Cantrell v. Commonwealth*, 329 S.E.2d 22, 26 (Va. 1985). These decisions correctly recognize that criminal prosecution by an attorney with a conflict of interest implicates a criminal defendant's right to due process—regardless of where that conflict of interest originates.

In this case, the conflict of interest is real: the federal prosecutors currently prosecuting Merritts outright violated the tax secrecy laws and did so even after the IRS—in writing—told them not to and correctly informed them that the consequences for doing so could be criminal and/or civil. Merritts exercised his right to seek relief in the form of a civil cause of action statutorily created by Congress for precisely this conduct. And the prosecutors have already, in this criminal case, sought to protect themselves from civil liability by seeking an order *nunc pro tunc* permitting disclosure as if that would somehow insulate the violation of law that had already occurred. As this Court may not be aware, this was *after* the prosecutors—clearly recognizing a violation of Section 6103—engaged in *ex parte* communication with the clerk's office inquiring about who, other than the Government and defense counsel, had accessed the confidential tax records from PACER and the clerk's office informed them it was impossible for the Court to make that determination. However, it is particularly concerning because, well before this Section 6103 violation, this case has garnered significant media attention at various stages—initially as a result of a press release generated by the U.S. Attorney's Office in March 2025. When producing the email correspondence with the clerk's office to the defense only upon our request, the U.S. Attorney's Office for the District of Columbia expressly acknowledged—by email—that at least two of the documents it published on this Court's docket fall "within the ambit of 26 USC 6103."

In short, the AUSAs responsible for the Section 6103 violation should not be further prosecuting Merritts—because, knowing he seeks relief in a pending civil case for statutory and punitive damages, they have every incentive to try to discredit him and to retaliate against him. And to be clear, Merritts did not manufacture this conflict of interest; rather, it is a result of their unlawful conduct and a valid private cause of action statutorily created by Congress for precisely these purposes.

But even if this Court were to presume that the prosecutors assigned to this case will not act

improperly as a result of their actual conflict of interest, the reality is that the appearance of impropriety is unavoidable.

To be clear, the *appearance of impropriety* itself requires disqualification of the prosecution team in this case. *See Williams v. Pennsylvania*, 579 U.S. 1, 15 (2016) ("[T]he appearance of bias demeans the reputation and integrity not just of one jurist, but of the large institution of which her or she is a part."); *see also, e.g., Roman v. State,* 373 Ga. App. 863, 865 (Ga. Ct. App. 2024), *cert. denied* (Ga. 2025) (emphasizing that disqualification was required where a public prosecutor's conduct created a significant appearance of impropriety during the exercise of prosecutorial discretion, even absent proof of actual prejudice); *Battle v. State*, 301 Ga. 694, 698 (Ga. 2017) (stating that the appearance of impropriety may be grounds for disqualification of a prosecutor). As a plurality of the U.S. Supreme Court in *Vuitton* recognized, the participation of a conflicted prosecutor raises doubts that "undermine[] confidence in the integrity of the criminal proceeding," and "'calls into question the objectivity of those charged with bringing a defendant to judgment.'" 481 U.S. at 810 (plurality opinion) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986)). This is consistent with 5 CFR § 2635.101(b)(14), which requires federal prosecutors to "avoid any actions *creating the appearance* that they are violating the law or the ethical standards" set forth in the regulations.

In this case, both the inherent conflict of interest and the appearance of a conflict of interest are overwhelming. Merritts filed a statutorily authorized civil lawsuit because the prosecution in his criminal case violated the law by publicly disclosing his confidential tax return and return information. As set out in a letter addressed to the U.S. Attorney's Office for the District of Columbia, the IRS disclosed the confidential materials "with the understanding that it will be used strictly in accordance with, and subject to the limitations of, the disclosure provisions of IRS 6103." (Doc. 31-5.) The IRS further stated (accurately): "If you or other personnel disclose the

7

information contrary to these guidelines or use it for other purposes, you may become liable for civil damages, fines, and imprisonment for unauthorized disclosure under IRC Sections 7213, 7213A, and 7431, as well as Title 18 Section 1905 of the United States Code." (*Id.*).

This is a textbook Section 6103 violation—the kind taught to federal prosecutors who have access to federal tax returns and return information at the early stages of their employment. Indeed, the U.S. Attorney's Office for the District of Columbia in this case even had to obtain (and did obtain) a court order to obtain this material in the first place and it was provided to them with strict instructions from the IRS not to violate Section 6103 by further disclosing their contents.

The bottom line is that, regardless of their intentions, the prosecutors currently assigned to this case outright violated Section 6103 by disclosing to the world confidential tax return and return information including, but not limited to, disclosing the name, Social Security Number, home address, tax filing history, and a full federal income tax return of the husband of a former United States Congresswoman who is currently running in an effort to reclaim her seat in the next congressional election. And they did so in a case that has garnered significant media attention initially as a result of a press release they issued in March 2025 publicizing the indictment they obtained. That press release led to news coverage by national media outlets because, as they well knew, Merritts is the husband of a former U.S. Congresswoman who is now running in an effort to reclaim her seat. As the law expressly provides, Merritts is seeking statutory and punitive damages for the Section 6103 violations and the people and office alleged to be culpable have every incentive to do everything possible to discredit him and to retaliate against him in the pending federal criminal case. In simple terms, they have every incentive—personally, not only institutionally—to silence him and to turn him into a convicted felon by the time his civil case is ultimately litigated. They are necessarily witnesses in the civil case. Bluntly speaking, they are no longer disinterested prosecutors—and even if they were to treat him fairly in the criminal case, the

appearance of impropriety is substantial.

To that end, this Court can and should use its supervisory powers to ensure that the prosecutors handling this matter are objectively disinterested—and appear so to the general public, as the law requires. Federal courts have a general supervisory power with respect to the administration of justice in federal judicial proceedings. *See United States v. Hasting,* 461 U.S. 499, 505 (1983). "The use of the supervisory power supports three institutional goals: deterring illegal conduct by government officials, protecting and preserving the integrity of the judicial process, and implementing a remedy for violation of recognized rights." *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414, 1436 (D. Md. 1986) (citing *Hasting*, 461 U.S. at 505; *United States v. Payner,* 447 U.S. 727, 735 n. 8 (1980)). "Within limits, federal courts may formulate procedural rules not specifically required by the Constitution or the Congress." *Id.* at 1436–37. "In determining the proper remedy pursuant to the supervisory power, the relief chosen should be directly related to the seriousness of the misconduct." *Id.* at 1438 (citing *United States v. Banks*, 383 F. Supp. 389, 392 (D.S.D. 1974)). In *United States v. Dyess*, the United States District Court for the Southern District of West Virginia disqualified the U.S. Attorney's Office after determining, "The potential conflict between protecting the good name of the office and its agents while ensuring that the Government's interests in justice are fully and fairly represented is clear and unavoidable." 231 F. Supp. 2d 493, 498 (S.D.W. Va. 2002). The court continued, "This conflict of interest highlights the Court's final and paramount concern, the potential for the *appearance of impropriety*. The Court's ultimate consideration must be public confidence in the administration of justice, that 'justice must satisfy the appearance of justice.'" *Id.* (quoting *United States v. Johnston,* 690 F.2d 638 (7th Cir.1982) (emphasis added)). As the Supreme Court emphasized in no uncertain terms, federal courts such as this Court have an obligation to ensure "that legal proceedings appear fair to all who observe them." *Wheat v. United States,* 486 U.S. 153, 160 (1988). An observer of this trial would no doubt question the fairness of

these proceedings if conducted by prosecutors fully incentivized to discredit and to retaliate against a defendant who brought a valid civil cause of action against the United States arising out of their conduct.

"District judges have 'substantial latitude' in deciding whether counsel must be disqualified[.]" *United States v. Frega*, 179 F.3d 793, 799 (9th Cir. 1999). Because there exists, at a minimum, an appearance of impropriety that is "clear and unavoidable," this Court should disqualify the U.S. Attorney's Office for the District of Columbia or, in the alternative, the assigned AUSAs from further prosecution of this case and require substitute counsel to take their place. *See Dyess*, 231 F.Supp.2d at 498.

To be clear, the remedy Merritts seeks in this motion does *not* prevent this criminal case from being prosecuted; it prevents this case from being prosecuted by prosecutors who are no longer disinterested and by an office inherently interested in protecting its "good name." 231 F. Supp. 2d at 498. But the law requires more.

### III.   Conclusion

For the foregoing reasons, Merritts respectfully requests that this Court disqualify the U.S. Attorney's Office for the District of Columbia or, in the alternative and at a minimum, the prosecutors whose conduct is at issue in the pending Section 6103 civil litigation.

        Respectfully submitted,

        **Margulis Gelfand DiRuzzo & Lambson**

        */s/ Justin K. Gelfand*
        JUSTIN K. GELFAND
        JOSEPH A. DIRUZZO, III
        7700 Bonhomme Avenue, Ste. 750
        St. Louis, MO 63105
        Telephone: 314.390.0234
        Facsimile: 314.485.2264
        justin@margulisgelfand.com
        jd@margulisgelfand.com

**Certificate of Service**

    I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney and all other counsel in this case.

                                               */s/ Justin K. Gelfand*
                                               JUSTIN K. GELFAND
                                             JOSEPH A. DIRUZZO, III
                                             7700 Bonhomme Avenue, Ste. 750
                                             St. Louis, MO 63105
                                             Telephone: 314.390.0234
                                             Facsimile: 314.485.2264
                                             justin@margulisgelfand.com
                                             jd@margulisgelfand.com